# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# SOUTHWESTERN DIVISION

| | |
|---|---|
| Miguel Humberto Medina Romero, | ) |
| Petitioner, | ) **REPORT AND RECOMMENDATION** |
| vs. | ) |
| | ) Case No. 1:15-cv-47 |
| Colby Braun, Warden, NDSP, | ) |
| Respondent. | ) |

Before the court is a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner, Miguel Humberto Medina Romero's ("Romero") and respondent's Motion to Dismiss. For the reasons set forth below, the undersigned recommends that the Romero's petition be denied and the respondent's motion be granted.[1]

## I.  BACKGROUND

### A.  Prior state proceedings

On January 7, 2011 an Amended Felony Complaint/Information was filed in the District Court for Pembina County, North Dakota, charging Romero with Unlawful Possession/Manufacture of a Controlled Substance (Marijuana), a class B felony; Murder, a class AA felony; Unlawful Possession of a Controlled Substance with Intent to Deliver (Cocaine), a class A felony; and Tampering with Physical Evidence, a class C felony. (Ex. 2). On August 5, 2011, the jury found Romero guilty of Unlawful Possession/Manufacture of a Controlled Substance (Marijuana), Murder, and Unlawful Possession of a Controlled Substance with Intent to Deliver (Cocaine). (Exs. 3, 4, &

---

[1] The relevant state-court records are filed at Doc. No. 10 and will be referred to herein by their respective exhibit numbers.

1

5). The state district court dismissed the charge of Tampering with Physical Evidence after Romero's trial counsel made a motion to dismiss pursuant to Rule 29(a) of the North Dakota Rules of Criminal Procedure. (Ex. 6).

On October 18, 2011, Romero was sentenced to 10 years on the charge of Unlawful Possession/Manufacture of a Controlled Substance (Marijuana), life without parole on the charge of Murder, and 20 years on the charge of Unlawful Possession of a Controlled Substance with Intent to deliver (Cocaine). (Exs. 13, 14, &15). The three sentences run concurrently. (Ex. 15).

Romero appealed his conviction to the North Dakota Supreme Court on November 14, 2011. State v. Romero, 2013 ND 77, 830 N.W.2d 586. ("Romero I"). The North Dakota Supreme Court rejected his claims and affirmed his conviction. Id. at ¶ 35.

Romero next filed an application for postconviction relief with the state district court on September 19, 2013, that included several claims of ineffective assistance of trial counsel. After an evidentiary hearing, the state district court denied the application for post-conviction relief on July 21, 2014. On March 6, 2015, the North Dakota Supreme Court affirmed the trial court's denial of the post-conviction application, issuing a short unpublished *per curiam* decision. Romero v. State, 2015 ND 46, 861 N.W.2d 172 (Table) 2015 WL 1306584 ("Romero II").

    **B.**    **Romero's § 2254 petition**

After exhausting his state-court remedies, Romero filed his § 2254 petition with this court. Romero's petition raises two claims of ineffective assistance of counsel in violation of the Sixth Amendment. The first is whether his trial counsel was ineffective by failing to call an eye witness to testify at the trial who, according to Romero, could have discredited key prosecution witnesses.

The second is whether his counsel was ineffective in purportedly failing to explain the voir dire and jury selection process to him. (Doc. No. 2, pp. 5-6).

C. **Evidence supporting Romero's conviction**

The following factual summary, taken verbatim from the decision of the North Dakota Supreme Court on direct appeal, is set forth below because it provides context in evaluating the significance of Romero's current claims.

> [¶2] In October 2010, the State charged Romero with unlawful possession/manufacture of a controlled substance (marijuana), a class B felony, and murder, a class AA felony. In January 2011, the State amended the charges to add charges of unlawful possession of a controlled substance (cocaine) with intent to deliver, a class A felony, and tampering with physical evidence, a class C felony.
>
> [¶ 3] On October 16, 2010, Romero shot and killed Bryon Kalis. According to trial testimony, Romero and several friends, including juveniles, traveled from Pembina to Grand Forks on October 15, 2010, and rented a hotel room. According to testimony, Romero wanted to purchase marijuana while in Grand Forks. On the basis of information received from Kalis, Romero and C.E., a minor, arranged to meet Lindsey Lafferty in East Grand Forks on October 16, 2010. C.E. testified that Lafferty agreed to get them marijuana in exchange for $240 and five Xanax bars, with C.E. and Romero each contributing half of the $240. However, after receiving the money and bars, Lafferty did not return with the marijuana. Lafferty testified at trial that she had no intention of getting the marijuana and just "ripped them off for the money." She also testified that although she received a threatening text message from Romero, she still had no intention of getting him marijuana. There was testimony at trial that Romero was upset with Kalis for getting him involved with Lafferty. Romero and Kalis then began exchanging text messages, which, according to evidence presented at trial, contained escalating threats.
>
> [¶ 4] According to the testimony, after returning to Pembina from Grand Forks on October 16, 2010, Romero, B.O., B.B., and Jace Brown were at Romero's home when they heard a car with a loud engine driving around or circling the block, revving its engine. Both B.B. and Brown testified at trial that Romero went outside one time to see who it was, but came back inside when no one was there. B.B. and Brown testified that Kalis, the driver of the car, stopped again and yelled for them to come down and that his vehicle, slammed on the brakes, threw open his car door, and moved quickly toward Romero, waiving his arms or fists and yelling at Romero. Kalis also reportedly said, "[J]ust shoot me..., if you're going to shoot me, just shoot me." Romero then shot Kalis. According to the testimony, Romero fired the rifle thirteen times, with a fourteenth shell misfiring, and eight bullets struck Kalis, killing

3

him. B.B. testified Kalis was three feet from Romero when Romero fired the rifle. Romero called 911 and reported the shooting.

[¶ 5] According to the testimony of a Pembina County deputy sheriff, Romero reportedly said Kalis was trying to break into Romero's home with a baseball bat so Romero shot him. B.B. testified at trial that after getting out of his car, Kalis could have had something in his hand. B.B. was unsure what it was, but testified Kalis did not have a bat. Brown testified Kalis may have had something in his hand and thought he heard something wooden hit the concrete by Kalis's car. After police officers arrived at the scene, a Pembina County deputy sheriff found a knife by Kalis's body and a bat a few feet away. A North Dakota Highway Patrol officer took measurements of the crime scene. In investigating the crime scene, officers also searched Romero's house. Upstairs in the house, officers found marijuana plants and paraphernalia used to grow marijuana.

[¶ 6] C.E., who had accompanied Romero to Grand Forks, testified that while at the hotel in Grand Forks he had seen Romero with cocaine. C.E. testified he observed a bag of white powder and money on the table and Romero told him it was cocaine. C.E. testified that in the days after the shooting, B.O. brought a black bag, which C.E. identified as Romero's, to C.E.'s house and that C.E. had taken the cocaine from the black bag and hidden the cocaine under the bridge. C.E. also subsequently led law enforcement officers to the bridge where he had hidden the cocaine from a black bag belonging to Romero. C.E. testified the cocaine was in one big bag and a couple of "designer bags," which were the same kinds of bags Romero had purchased in Grand Forks. C.E. testified it was Romero's cocaine.

[¶ 7] During a jury trial, the district court denied Romero's motion to allow the jury to view the crime scene. At the close of the State's case, Romero moved to dismiss the charges under N.D.R.Crim.P. 29. The district court granted Romero's motion to dismiss the charge of tampering with physical evidence, but denied his motion on the other three charges. The jury found Romero guilty of the three remaining charges.

Romero I, 2013 ND 77, ¶¶ 2-7.

## II. SCOPE OF REVIEW

Under 28 U.S.C. § 2254, a federal court may review state-court criminal proceedings to determine whether a person is being held in custody in violation of the United States Constitution or other federal law. However, where the state court has adjudicated the federal claim on the merits, this court's review is limited by 28 U.S.C. § 2254(d) to a determination of whether the state court's

decision is (1) directly contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) based on an unreasonable determination of the facts based on the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d); see generally Harrington v. Richter, _ U.S. _, 131 S.Ct. 770, 784-85 (2011) ("Harrington"); Williams v. Taylor, 529 U.S. 362, 399-413 (2000).

This highly deferential standard of review is often referred to as "AEDPA deference" because it was enacted by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). E.g., Pederson v. Fabian, 491 F.3d 816, 824-25 (8th Cir. 2007); see generally Renico v. Lett, 559 U.S. 766 & 773 & n.1 (2010). The reasons for the limited review are ones of federalism and comity that arise as a consequence of the state courts having primary responsibility for ensuring compliance with federal law in state criminal proceedings. See, e.g., Harrington, 131 S.Ct. at 787.

## III. DISCUSSION

### A. Governing law

Under Strickland v. Washington, 466 U.S. 668 (1984), a defendant who claims ineffectiveness of counsel must demonstrate not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defendant. In regard to this analysis the Court explained in Strickland that:

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in [any particular] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

Id. at 697.

The test for deficient performance under the "first Strickland prong" is whether counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Id. at 688; Rompilla v. Beard, 545 U.S. 374, 380 (2005). When the issue involves a matter of trial strategy, there is a strong presumption that the strategy was sound and was not ineffective assistance. See Bell v. Cone, 535 U.S. 685, 698-702 (2002).

Under the "second Strickland prong," prejudice is only shown when there is a "*reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" E.g., Woodford v. Visciotti, 537 U.S. 19, 22 (2002) (per curiam) (quoting Strickland, 466 U.S. at 694 and adding emphasis). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 23 (quoting Strickland, 466 U.S. at 694).

When a state court has addressed a petitioner's ineffective-assistance claims on the merits and applied the Strickland test, a federal court must accord the state court's determination the deference required by 28 U.S.C. § 2254(d). Rompilla, 545 U.S. at 380. Assuming there are no issues with respect to the state court's findings of fact, the federal court's review is limited to the determination of whether the habeas petitioner has met the burden of proving that "the state court applied Strickland to the facts of his case in an objectively unreasonable manner." Woodford, 537 U.S. at 25; see also Rompilla, 545 U.S. at 380. The Supreme Court has characterized the application of the Strickland standard through the prism of AEDPA as amounting to a "doubly deferential" standard of review. E.g., Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

**B.    State court proceedings**

The state district court rejected the first claim that Romero makes now, along with others that he does not present here, stating the following:

6

> This Court concludes that Mr. Miguel Medina-Romero has failed to show that Robert Fleming and Neil Fleming were ineffective counsel based on the evidence presented. The motion for change of venue was not pursued because the facts and all circumstances did not support that motion prior to trial. The fact that they did not give Mr. Medina-Romero written copies of statements but discussed those statements with him in person, does not rise to any level of ineffective assistance of counsel. In the jury selection process all jurors who claimed knowledge of the case were objected to and were removed. The passing by witness that Mr. Medina-Romero claims should have been called does not establish ineffective assistance of counsel as no evidence was presented to show what that witness's statement would have been or how that would have impacted on the trial or changed the result in any way.

(Ex. 25, ¶15). Romero's second claim of ineffective assistance appears not to have been presented in his state petition for post-conviction relief and no ruling was made by the state district court on that claim. (Exs. 21 & 25). On appeal, however, Romero presented both of the claims of ineffective assistance that he makes now, along with other claims, and the State did not object to the presentation of the second claim on procedural grounds, but rather argued for its dismissal on the merits. (Exs. 27 & 28). The North Dakota Supreme Court affirmed the dismissal of Romero's petition for postconviction relief, stating:

> PER CURIAM
> [¶1] Miguel Humberto Medina-Romero appeals from a district court order denying his application for postconviction relief from a conviction by a jury of murder, possession/manufacture of a controlled substance (marijuana) and possession/manufacture with intent to deliver a controlled substance (cocaine). Romero argues the district court erred in finding representation of his attorney at trial did not constitute ineffective assistance of counsel when counsel failed to investigate a material witness and failed to properly explain voir dire and the jury selection process. We summarily affirm under N.D.R.App.P. 35.1(a)(2), concluding the district court's findings of fact are not clearly erroneous.

Romero II, 2015 ND 46, ¶1.

While it is clear that the North Dakota Supreme Court denied both of the Strickland claims that he makes now on the merits, what is not clear is the exact grounds for the denial, *i.e.*, whether it was Romero's failure to satisfy the deficient-performance prong, the prejudice prong, or both

7

prongs, since the court's decision is not specific in its reasoning and since the court did not explicitly adopt the reasons advanced by the district court. Consequently, the review here will be whether there are any reasons that the North Dakota Supreme Court could have relied upon in denying the claims that would not be contrary to, or an unreasonable application of prior United States Supreme Court precedent. E.g., Williams v. Roper, 695 F.3d at 833-37; see Harrington, 131 S.Ct. at 786.

      **C.**    **First ground: petitioner's trial attorney failed to call an eye witness to testify at the trial who could have discredited key prosecution witnesses.**

Romero argues with respect to his first claim of ineffective assistance of counsel that his trial attorney "failed to call a an [*sic*] eye-witness to testify at his trial that according to her statements made to the police would have bolstered the Petitioner's claim's of self-defense made at trial that conflicted with key prosecution witnesses . . . . " (Doc. No. 12). Romero further alleges that he was prejudiced "because of his attorney's performance the Petitioner failed to fully present his case for self-defense so he didn't have a chance at an acquittal of his murder charges, or at receiving lesser included offense jury instructions . . . ." (Id).

The state district court rejected this claim because Romero failed to provide any evidence to show what that eye-witness's statement would have been or how that would have impacted the trial and changed the result in any way. (Ex. 25, ¶15). The state district court further stated that "even if the Court were to accept some of the Petitioner's arguments that his legal representation should have a [*sic*] called a witness, for example, there is no showing that the lack of doing so would have resulted in a different result. (Id. at ¶16).

In order to demonstrate prejudice, Romero "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

8

Strickland, 466 U.S. at 694. In order to conduct this analysis, the court is required to add the expected testimony of the eye-witness to the totality of the evidence that was actually presented at trial. See Armstrong v. Kemna, 534 F.3d 857, 866 ( 8th Cir. 2008), citing McCauley-Bey v. Delo, 97 F.3d 1104, 1105-06 (8th Cir. 1996), cert. denied, 520 U.S. 1178 (1997).

However, the eye-witness that Romero alleges would have been helpful to his defense did not testify at the post-conviction hearing. Furthermore, the record in this matter is absent of any signed statement, affidavit, or a sworn evidentiary deposition from the eye-witness indicating what her actual testimony would have been at trial. In fact, the record does not even include the voluntary police statement allegedly given by this eye-witness.

"Ordinarily, a defendant's failure to present some evidence from the uncalled witness regarding that witness's potential testimony . . . would be fatal to an ineffective assistance of counsel claim." Armstrong, 534 F.3d at 867 quoting Harrison v. Quarterman, 496 F.3d. 419, 428 (5th Cir. 2007) (citations omitted). In order to prove prejudice, Romero must show that the uncalled eye-witness would have testified in his defense and that the testimony would have been favorable. Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir. 1990). See Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2003) ("[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." (Citation omitted)); see also United States ex rel. Partee v. Lane, 926 F.2d 694, 701 (7th Cir. 1991) ("a habeas court cannot even begin to apply Strickland's standards to . . . a [missing witness] claim unless and until the petitioner makes a specific, affirmative showing as to what the missing evidence or testimony would have been. Without such a showing, it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was

9

prejudiced by any deficiencies in counsel's performance." (citation and internal quotation marks omitted)).

Here, Romero's unsupported statement that this eye-witnesses testimony would have "bolstered" his claim of self-defense fails to demonstrate the requisite prejudice under Strickland.[2] Consequently, the North Dakota Supreme Court's conclusion that Romero's trial attorney's failure to call this eye-witness did not constitute ineffective assistance of counsel is not contrary to or an unreasonable application of clearly established federal law, and is not based on an unreasonable determination of the facts. It is therefore recommended that Romero's first claim of ineffective assistance of counsel be DENIED.

D. **Second ground: petitioner's trial attorney failed to explain the voir dire and jury selection process.**

The second allegation in Romero's petition is that his trial attorney was ineffective because he failed to properly explain the voir dire and jury selection process. (Doc. No. 2). Romero contends that because his trial attorney did not properly explain the voir dire and jury selection process, he was denied the opportunity to make an informed decision whether or not to waive his right to a jury trial. (Doc. No. 12).

While this claim was not specifically the subject of the postconviction proceedings before the state district court as noted earlier, there was testimony presented with respect to the jury selection process. Romero's trial attorney testified that "[w]hen we did the voir dire we spent a fair amount of time on the race issue" and every juror "testified that they could be fair and impartial." (Ex. 24, p. 49). Romero's trial attorney further testified that "Romero was at table when we were

---

[2] Because the prejudice prong is not satisfied, there is no need to analyze whether Romero's trial attorney's performance was deficient.

10

picking the jury, before we struck people we would have a talk with Romero and say this is who I think should go, he had input in that decision, and we struck the people we believed were the most damaging people to our case." (Id. at p. 51). Romero also testified at the postconviction hearing and he did not say that his trial attorney had failed to explain the jury selection process and that he did not understand it. (Id. at pp. 7-34). In short, there is no evidence that Romero's trial attorney's performance was deficient in this manner.

Moreover, even if Romero had demonstrated that his trial attorney failed to explain the voir dire and jury selection process, Romero still has the burden of proving actual prejudice. Romero makes the conclusory argument that, if he would "have been informed that the jury pool would all be from the local jurisdiction, and that all that was required was a juror stating that they could be objective and have no bias, he would have asked for a bench trial." (Doc. No. 12) Romero further argues that "prejudice is clearly shown because with a bench trial the probability of the judge finding the required elements for reduced charges, or an acquittal of the murder charge was far higher than the jury relying on given instructions." Id.

Here, Romero's assertion that he would have opted for a court trial had he been properly advised about the jury selection process is pure speculation. There is no evidence that his attorney, who was familiar with the jury selection process and presumably also the merits and pitfalls of a court trial, did not recommend waiving the jury. Also, even more speculative is his assertion that the court would have come to a different conclusion than the jury.

Mere speculation is insufficient to establish an attorney's ineffectiveness. When seeking habeas relief, the burden is on the petitioner to prove that his rights have been violated. Speculation and conjecture will not satisfy this burden." Sargent v. Armontrout, 841 F.2d 220, 226 (8th Cir.

1998). See Becker v. Luebbers, 578 F.3d 907, 917 (8th Cir. 2009) (there was no unreasonable application of Strickland in the denial of habeas petitioner's ineffective assistance of counsel claim that was based on speculative results of "different or further cross-examination" of a witness); see also Middleton v. Roper, 455 F.3d 838, 854 (8th Cir. 2006) (a federal habeas claim "solely on speculation" was properly denied); see also Hunter v. Bowersox, 172 F3d 1016, 1024 (8th Cir. 1999) (one of petitioner's ineffective assistance of counsel claims was properly rejected upon concluding that it was based on "sheer speculation");.

For these reasons, the North Dakota Supreme Court's dismissal of Romero's claim that his counsel was ineffective in failing to explain the voir dire and jury selection process is not contrary to or an unreasonable application of clearly established federal law, and is not based on an unreasonable determination of the facts. It is therefore recommended that this portion of Romero's second claim for relief be DENIED.

## IV.    CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. When the court has rejected a petitioner's claim on the merits, the substantial showing required is that the "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also, United States v. Lambros, 404 F.3d 1034, 1036-1037 (8th Cir. 2005); Garrett v. United States, 211 F.3d 1075, 1076-77 (8th Cir. 2000).

In this case, reasonable jurists would not find debatable the conclusion that the North Dakota Supreme Court's denial of Romero's ineffective assistance claim was reasonable given the degree of deference that must be accorded its decision under <u>Strickland</u> and § 2254(d).

## V. **RECOMMENDATION**

Based on the foregoing, it is **HEREBY RECOMMENDED:**

1. Respondent's Motion to Dismiss Romero's Petition (Doc. No. 8) be **GRANTED;**

2. Romero's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Docket No. 2) be **DENIED**;

3. The court certify that an appeal from the denial of this action may not be taken *in forma pauperis* because such an appeal would not be in good faith absent a certificate of appealability; and

4. A certificate of appealability not be issued.

### NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 8th day of September, 2015.

> */s/ Charles S. Miller, Jr.*
> Charles S. Miller, Jr., Magistrate Judge
> United States District Court